# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No: _____

UNITED STATES OF AMERICA, for the Use and Benefit of SUBSTATIONS, INC., A Montana Corporation,

    Plaintiff,

v.

NATIONAL ELECTRICAL SYSTEMS, INC., a New York Corporation, and INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey Corporation,

    Defendants.

## COMPLAINT

Plaintiff Substations, Inc. ("Substations"), by and through its attorney of record, Saliman Law, LLC, for its causes of action against National Electrical Systems, Inc. ("NESI") and International Fidelity Insurance Company (IFIC), states and alleges as follows:

## PARTIES AND JURISDICTION

1. Substations is a Montana corporation with its principal place of business located in Helena, Montana. Substations brings its Miller Act claim in the name of the United States of America for the Use and Benefit of Substations, Inc., pursuant to 40 U.S.C. § 3133(b)(3)(a). Substations brings its state law claims in its own name.

2. NESI is a New York corporation with its principal place of business located in Rome, New York, doing business as a foreign profit corporation in Montana.

3. IFIC is a New Jersey corporation authorized to do business in the State of Colorado.

4. This Court has Federal Question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 3133(b)(3)(B). This Court has pendent jurisdiction and supplemental jurisdiction over the Montana state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367. This Court also has diversity jurisdiction over the Montana state law claims pursuant to 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000.00, and as the three corporate parties are each citizens of different states as provided in 28 U.S.C. §1332(c).

5. Venue is proper in the United States District Court for the District of Colorado pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2) because the contract at issue was to be performed and executed in Larimer County, Colorado.

**FACTS**

6. On or before August 18, 2015 NESI contracted with the United States Department of Energy Western Area Power Administration ("WAPA") on the federal project known as the "Poudre Substation Project" pursuant to Contract No. DE-WA0002763 ("prime contract"). The terms of the prime contract required NESI to install an electrical substation in Fort Collins, Colorado.

7. On August 18, 2015, NESI obtained a Miller Act payment bond ("bond") from IFIC in the amount of $616,460.06 as required by WAPA. In the bond, IFIC agreed to be bound "jointly and severally" with NESI to make payment to all persons having a direct contractual relationship with NESI or to any subcontractor of NESI who provided

labor, materials or both in the completion of the work contemplated by the prime contract in the event NESI failed to make prompt payment to such persons.

8. On or before May 31, 2016, NESI furnished Substations with a contract ("subcontract") to provide on-site supervision and technician labor services to complete the work contemplated by the prime contract on the electrical substation installation project in Fort Collins, Colorado. Substations signed the subcontract on May 31, 2016 and returned it to NESI.

9. The subcontract is to be interpreted and enforced under Montana law.

10. Pursuant to the terms of the subcontract, NESI agreed to pay Substations "net 10 day[s] upon receipt of valid invoice."

11. Substations performed a significant amount of the work contemplated by the parties' subcontract despite never receiving a signed copy of the subcontract back from NESI. This work was completed between June 2016 and August 11, 2016, and consisted of providing "site supervision, site protection including installing protective leads, and all of the site electrical work and testing with exception to the transformer assembly and oil filtering in accordance to (*sic*) specification."

12. From June through August 11, 2016, Substations routinely provided services outside of those contemplated by the parties' original subcontract so that NESI could complete the work it was hired to perform by WAPA. These additional services included, but were not limited to, providing additional labor to pour concrete pads and procure additional equipment necessary to complete the contemplated work.

13. All conditions precedent necessary for Substations to be paid have been performed and occurred.

14. NESI breached its obligations under the subcontract by failing to pay Substations for the work it performed and NESI accepted.

15. NESI benefitted from the work Substations completed when it was paid for the job by WAPA.

16. NESI's failure to fulfill its obligations under the subcontract caused Substations to incur damages in the amount of $111,087.50.

17. More than ninety (90) days have passed since Substations concluded its work on the Poudre Substation Project. Substations provided notice of its claim for payment to NESI within 90 days of completing its work. Substations has satisfied all conditions necessary to pursue a claim under 40 U.S.C. § 3133.

**COUNT I**
**MILLER ACT PAYMENT BOND PURSUANT TO 40 U.S.C. § 3133**

18. Each and every allegation set forth in ¶¶ 1 through 17 are incorporated by reference as if fully set forth herein.

19. IFIC is obligated, pursuant to the terms of the bond, to pay Substations for the labor and services it furnished in completion of the work contemplated in the prime contract, and for which NESI failed and refused to make payment.

20. IFIC has failed to fulfill its obligation under the bond to pay Substations for the labor and services it provided in completion of the work contemplated in the prime contract, and for which NESI failed and refused to make payment.

21. Substations is entitled to payment from IFIC pursuant to the Miller Act, 40 U.S.C. § 3133, for all amounts due under the subcontract.

## COUNT II
## BREACH OF CONTRACT

22. Each and every allegation contained in ¶¶ 1 through 21 are incorporated by reference as if fully set forth herein.

23. NESI was a party to the subcontract with Substations for the on-site supervision and construction of an electrical substation in Fort Collins, Colorado.

24. From June 2016 through August 11, 2016, Substations performed a significant amount of the work contemplated in the subcontract including, but not limited to, providing on-site superintendents and providing labor services for the completion of construction projects relating to the installation of an electrical substation.

25. NESI breached its obligations under the subcontract by failing to pay Substations for any of the services it rendered pursuant to the subcontract.

26. As a direct and proximate result of NESI breaching its contractual obligations, Substations suffered damages, including $111,087.50 in unpaid invoices for labor and services provided.

27. Pursuant to Mont. Code Ann. § 28-2-2105, Substations is also entitled to costs and attorney's fees resulting from NESI's breach of its contractual obligations.

## COUNT III
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

28. Each and every allegation contained in ¶¶ 1 through 27 are incorporated by reference as if fully set forth herein.

29. NESI was a party to the subcontract with Substations for the on-site supervision and construction of an electrical substation in Fort Collins, Colorado.

30. By allowing Substations to complete a substantial amount of the work contemplated by the subcontract, and without performing any of its contractual obligations, NESI breached the implied covenant of good faith and fair dealing which is implied in all contractual relationships and governed by Mont. Code Ann. § 28-1-211. By failing to pay Substations for the work it completed pursuant to the terms of the subcontract, NESI breached the implied covenant of good faith and fair dealing which is implied in all contractual relationships and governed by Mont. Code Ann. § 28-1-211.

31. As a result of the breach of the implied covenant of good faith and fair dealing by NESI, Substations has suffered damages in the amount of $111,087.50.

**COUNT IV**
**QUANTUM MERUIT**

32. Each and every allegation contained in ¶¶ 1 through 31 are incorporated by reference as if fully set forth herein.

33. Substations provided valuable labor and services necessary for NESI to perform and complete its obligations under the subcontract. The value of the labor and services exceeded that which was originally contemplated by the subcontract.

34. NESI benefitted from Substation's labor and services, including but not limited to the fact that NESI could not have fully completed its obligations under the prime contract absent the labor and services provided by Substations. It would be unjust for NESI to retain this benefit without compensating Substations.

35. NESI has failed and refused to pay Substations for the labor and services Substations provided to NESI.

36. Substations has suffered damages and NESI has been unjustly enriched as a result of NESI's failure to pay Substations for the labor and services provided by Substations.

## PRAYER FOR RELIEF

WHEREFORE, Substations respectfully requests that this Court enter judgment in its favor on all claims against NESI and IFIC in an amount that awards Substations for:

1. All compensatory damages in an amount to be determined at trial;

2. Pre- and post-judgment interest on all such amounts to the extent permitted by law;

3. Costs, expenses, disbursements, and attorney's fees incurred by Substations in the proceedings to the extent permitted by law; and

4. For such other relief to which Substations is entitled.

Respectfully submitted this 9th day of August 2017.

/s/ Mark E. Saliman
Mark E. Saliman (Colo. Reg. #20974)
Saliman Law, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO  80210
Telephone: 720-970-7652
E-Mail: mark@salimanlaw.com
**ATTORNEY FOR PLAINTIFF**